**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SYED ZAIDI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24 C 9857** |
| | ) | |
| **1-800-PACK-RAT, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiff Syed Zaidi has filed a negligence action against Defendant 1-800-PACK-RAT (Pack-Rat). Zaidi entered into a contractual agreement with Pack-Rat to lease a warehouse that Pack-Rat owns and operates in Bartlett, Illinois. On July 18, 2024, while Zaidi was at the warehouse, a side of a modular home attached to a forklift fell on him. Zaidi alleges that Pack-Rat employees failed to properly secure the modular home to the forklift and that the accident was a result of the employees' and thus Pack-Rat's negligence. Zaidi says he suffered serious injuries from this accident, including bilateral ankle fractures, a skull fracture, and a traumatic brain injury that required an extensive course of treatment.

In response to Zaidi's suit, Pack-Rat has asserted defenses including contractual indemnification, waiver and assumption of risk, and contributory negligence. Zaidi initially moved to strike the contractual indemnification defense via a motion for summary judgment. Because the motion relied solely on the pleadings, however, the

Court ruled that it would consider the motion as a motion for judgment on the pleadings or a motion to strike the defense. *See* dkt. 20. In his reply brief, Zaidi retitled his motion as a motion to strike. The Court thus considers the motion as a motion to strike an affirmative defense.

For the reasons below, the Court denies Zaidi's motion.

**Discussion**

Federal Rule of Civil Procedure 12(f) permits the court to strike an insufficient defense. Fed. R. Civ. P. 12(f). A motion to strike a defense will be granted only if "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense . . . and are inferable from the pleadings." *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (internal quotation marks and citations omitted).

On July 8, 2024, Zaidi agreed to Pack-Rat's Warehouse Use and License Agreement and Terms of Service. The Terms of Service's indemnification provision, in relevant part, reads:

> 10. **Indemnity:** . . . [Zaidi] hereby agrees to indemnify, defend and hold [Pack-Rat], Warehouse Exchange and their respective members, shareholders, partners, officers, directors, employees, agents and representatives harmless from any and all claims or assertions of every kind and nature arising from or in connection with [Zaidi's] use and/or occupancy of the Licensed area, including but not limited to personal injury, loss of life or limb . . . provided, however that the foregoing indemnity shall not apply to claims arising out of the gross negligence or willful misconduct of the [Pack-Rat]. [Pack-Rat] hereby agrees to indemnify, defend and hold [Zaidi] harmless from any and all claims or assertions of every kind and nature arising from or in connection with [Pack-Rat's] gross negligence or willful misconduct; provided however that such indemnification shall not apply to damage or loss of [Zaidi's] personal property. . . .

Answer, Ex. A ¶ 10. Pack-Rat argues that under this provision, it is indemnified against

Zaidi's negligence claim. Zaidi disagrees; he argues that "Pack-Rat cannot be indemnified for its own negligence because the provision does not express that at all, let alone to [satisfy] the 'clear and explicit' standard." Pl.'s Mem. at 6. According to Zaidi, the indemnification provision's silence on claims arising from Pack-Rat's negligence defeats Pack-Rat's interpretation of the provision.

**A. Indemnification agreements under Illinois law**

Indemnification agreements are contracts and are therefore analyzed using contract interpretation rules. *See Va. Sur. Co. v. N. Ins. Co. of N.Y.*, 224 Ill. 2d 550, 556, 866 N.E.2d 149, 153 (2007). Under Illinois law, "indemnity contracts are strictly construed," and are not "construed as indemnifying against a party's own negligence unless such a construction is required by clear and explicit language of the contract, or such an intention is expressed in unequivocal terms." *McNiff v. Millard Maint. Serv. Co.,* 303 Ill. App. 3d 1074, 1077, 715 N.E.2d 247, 249 (1999). Still, "Illinois law generally provides that contracts of indemnity against one's own negligence are valid and enforceable." *Nicor Gas Co. v. Village of Wilmette,* 379 Ill. App. 3d 925, 929, 884 N.E.2d 816, 820 (2008).

In arguing that the agreement fails to indemnify Pack-Rat for claims arising from its own negligence, Zaidi cites several cases in which courts found that an indemnitee was not indemnified for its own negligence in situations where the pertinent agreement that lacked language stating—in so many words—that the indemnitor would be liable for such claims. He also cites cases in which courts found that an indemnitee was indemnified for its own negligence where there was an agreement that included express language saying as much *See e.g.*, *Zadak v. Cannon,* 59 Ill. 2d 118, 119 319 N.E.2d

469, 471 (1974) (clause covering claims "arising out of any such work" limited the indemnity provision to the work performed only by the indemnitor's employees under the contract and did not cover indemnitee's negligence); *McNiff,* 303 Ill. App. 3d at 1076, 715 N.E.2d at 248 (no coverage of indemnitee's negligence because provision limited claims to those "arising out of or incidental to the Work, including, without limiting the foregoing, all acts and omissions of the officers, employees and agents of [*the indemnitor*] or any of its subcontractors"); *Westinghouse Elec. Elevator Co. v. LaSalle Monroe Bldg. Corp.,* 395 Ill. 429, 432, 70 N.E.2d 604, 606 (1946) (no indemnification for claims arising from indemnitee's negligence because contract covered claims only "arising out of any acts or omissions by the [*indemnitor*]"); *Schek v. Chi. Transit Auth.*, 42 Ill. 2d 362, 363, 247 N.E.2d 886, 887 (1969) (finding indemnity for indemnitee's negligence because contract expressly stated "caused by the negligence of Licensor."); *Allen v. Int'l Harvester Co.*, 212 Ill. App. 3d 655, 660, 571 N.E.2d 773, 777 (1991) (provision included language expressly covering claims arising from negligence of indemnitee).

Zaidi correctly contends that these cases reflect that an indemnification agreement's language must clearly indicate that claims arising from an indemnitee's negligence is covered. But his contention that these cases indicate that to do so, an agreement must refer expressly to the indemnitee's negligence is incorrect. As the Seventh Circuit has stated, "Illinois law does not require indemnity contracts to contain an express provision providing for the coverage of the indemnitee's own negligence in order for them to be enforceable. Instead, it contains only the more commonplace rule that indemnity provisions, when ambiguous, will not be interpreted in this way."

*Freislinger v. Emro Propane Co.*, 99 F.3d 1412, 1420 (7th Cir. 1996).

Zaidi's additional argument in the same vein—that the use of the phrase "any and all claims" in an indemnification agreement (the terminology used in the present agreement) is insufficient on its own to provide indemnity for claims arising from an indemnitee's negligence—likewise misconstrues Illinois law. This very argument was rejected by the Illinois Supreme Court in *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 310, 315, 882 N.E.2d 525, 533 (2008). In *Buenz,* the court explained that past cases in which courts had found an indemnitee's negligence was not covered by an indemnification agreement despite the agreement's use of the phrase "any and all claims" did not represent a rule that "any and all" language is insufficient to provide indemnity. Rather, those decisions resulted from the fact that the contracts at issue "contained express clauses limiting indemnification to negligence occasioned by the indemnitor." *Id.* at 315, 882 N.E.2d at 533. The court stated that in cases involving agreements with such limiting language, "courts will not strain, simply because the contract also contains 'any and all' language, to read into that contract indemnification for an indemnitee's own negligence." *Id.* at 315-16, 882 N.E.2d at 533. But the court disagreed with the proposition that this reasoning in any way implied that "the inclusion of the phrase 'any and all' within an indemnification clause is insufficient to indemnify an indemnitee for its own negligence." *Id.* That is the very argument that Zaidi makes here.

The agreement in *Buenz* provided, in relevant part, that "[indemnitor] shall indemnify [indemnitee] against, and hold [indemnitee] harmless for any and all claims * * * arising out of, [in] connection with, or resulting from the possession, use, operation or

returning of the equipment during all periods when the equipment shall be out of the possession of [indemnitee]." *Id.* at 317-18, 882 N.E.2d at 534 (internal quotation marks omitted). The court concluded that this clause contained no limiting language to "suggest that the indemnity provided is not intended to cover claims resulting from [indemnitee's] own negligence." *Id.* at 318, 882 N.E.2d at 534. Rather, the lack of limiting language and the inclusion of "any and all claims" was enough for the court to conclude that the agreement "clearly and explicitly provides indemnification for [indemnitee's] own negligence pursuant to the rest of the contract terms." *Id.*

In sum, the Court overrules Zaidi's contention that an indemnification agreement must specifically refer to a party's negligence in order to provide indemnity for the party's negligence.

**B. Zaidi and Pack-Rat's indemnity agreement**

The phrase "any and all," as used in agreement at issue in this case, is broad nad all inclusive. *See Haynes v. Montgomery Ward & Co.,* 47 Ill. App. 2d 340, 346, 198 N.E.2d 548, 551 (1964); *see also Buenz*, 227 Ill. 2d at 316, 882 N.E.2d at 533 ("[T]he use of the phrase 'any and all' may indicate . . . that the parties intended an indemnitee be indemnified, even for the indemnitee's own negligence"). It is worth noting that the Illinois Supreme Court—albeit years before *Buenz*—stated that "it serve[s] no useful purpose to attempt to analyze or reconcile the numerous cases interpreting indemnity clauses." *Zadak*, 59 Ill. 2d at 121, 319 N.E.2d at 471. Rather, it concluded, interpreting indemnity clauses is case-specific and depends primarily on the particular language of the specific agreement in question. *Id.*

The decisive language in the agreement at issue in this case is the clause stating

that the indemnification covers "any and all claims or assertions of every kind and nature arising from or in connection with Licensee’s use and/or occupancy of the Licensed area." The agreement describes the licensed area as the warehouse area, parking spaces, and common areas. *See* Pl.'s Ex. C. "Any and all" means what it says: it includes indemnity for claims arising from Pack-Rat's negligence, but not for claims arising from its gross negligence or willful conduct, which are specifically carved out later in the same paragraph of the agreement. The Court sees no ambiguity and no limiting language that could be construed as excluding claims arising from Pack-Rat's negligence. *See Freislinger*, 99 F.3d at 1420 (indemnity agreements lacking ambiguity can be found to cover indemnitee's negligence without the agreement expressly stating as much).

Zaidi argues that the agreement's carve out indemnifying Zaidi from Pack-Rat's gross negligence and willful misconduct indicates that he did not indemnify Pack-Rat for its negligence. To the contrary, however, this subsequent provision cuts against Zaidi's argument. Consistent with the principle "*expressio unius est exclusio alterius*"—the expression of one thing is the exclusion of the other—Pack-Rat's inclusion of language making it clear that it would not be indemnified for gross negligence or willful misconduct implies that the clause indemnifying Pack-Rat was intended to cover ordinary negligence, which is all that Zaidi alleges in his current complaint. *See, e.g., Delta Min. Corp. v. Big Rivers Elec. Corp.,* 18 F.3d 1398, 1405 (7th Cir. 1994); *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 668 (7th Cir. 2008); *Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 331 (7th Cir. 2021) (all applying *expressio unius* principle in the context of contract interpretation).

Zaidi alleges in his complaint that his injuries occurred due to Pack-Rat's negligence; he does not allege gross negligence, at least not in the current version of his complaint. The agreement covers claims "of every kind and nature arising from or in connection with [Zaidi's] use and/or occupancy of the Licensed area." As the Court has stated, this covers claims arising out of Pack-Rat's negligence. Thus, the only question remaining for purposes of the motion to strike is whether the claim arose from Zaidi's use or occupancy of the licensed area. At this point at least, that appears to be undisputed. Though the parties appear to dispute who was operating the forklift and caused the modular home piece to fall on top of Zaidi, this is beside the point; the agreement covers claims arising from Zaidi's *occupancy* of the licensed area even if he was not *using* that area. Zaidi does not appear to contend that his injuries occurred at a point when he was outside of the licensed area. So even if a Pack-Rat employee was operating the forklift, the agreement covers claims relating to injuries that Zaidi suffered while he was physically located in the licensed area.

For these reasons, the Court denies Zaidi's motion to strike the affirmative defense. It will be up to Zaidi to decide whether he can, consistent with Rule 11, amend his complaint to assert a claim of gross negligence on the part of Pack-Rat.

**Conclusion**

For the foregoing reasons, the Court denies plaintiff's motion to strike Pack-Rat's first affirmative defense [dkt. no. 17].

Date: March 8, 2025

MATTHEW F. KENNELLY
United States District Judge